UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LOWE,

                          Plaintiff,                         Case Number 08-10269

v.                                               Honorable David M. Lawson
                                                Magistrate Judge Mona K. Majzoub

SEETHA VADLAMUDI,
ELIZABETH TATE, RUTH
INGRAM, CORRECTIONAL
MEDICAL SERVICES, and PATRICIA
CARUSO,

                          Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS, OVERRULING
IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS, GRANTING
IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND
FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION, AND CONTINUING ORDER OF REFERENCE**

        The matter is before the Court on the parties' objections to a report filed by Magistrate Judge

Mona K. Majzoub recommending that the certain motions to dismiss or for summary judgment filed

by defendants Seetha Vadlamudi, Elizabeth Tate, Ruth Ingram, Patricia Caruso, and Correctional

Medical Service, Inc. be granted and the plaintiff's motion for a preliminary injunction be denied.

The Court entered a general order of reference to conduct all pretrial matters, after which these

defendants – all employees of the Michigan Department of Corrections plus the department's

medical services contractor – filed their motions.  Judge Majzoub filed her reports on June 6,

October 2, 7 and 14, 2008, and the plaintiff filed objections.  The matter is before the Court for a *de

novo* review.

        The claims in this case arise from the treatment – or lack thereof – of the plaintiff's

hypertension and degenerative disc disease.  He contends that the denial of medication by the

medical service provider in the prison and the refusal of the network medical care provider to honor a referral to a specialist amount to deliberate indifference to the plaintiff's serious medical needs, thereby violating his right under the Eighth Amendment to be free from cruel and unusual punishment. The defendants are Seetha Vadlamudi, a physician who was the prison's medical service provider; Elizabeth Tate, a supervisor at the Mound Correctional Facility; Ruth Ingram, another supervisor, who was never served; Patricia Caruso, the director of the Michigan Department of Corrections; and Correctional Medical Service, Inc. (CMS), the network care provider. The magistrate judge recommended that Vadlamudi's motion for summary judgment should be granted on the basis of qualified immunity, and Tate should be dismissed because the plaintiff conceded his claim against her; Caruso's motion should be granted because the plaintiff failed to allege supervisory liability or execution of an unconstitutional policy; and CMS's motion should be granted because the plaintiff alleges only a disagreement with the form of medical treatment, which does not violate the Eighth Amendment. After a *de novo* review, the Court concludes that Vadlamudi is not entitled to qualified immunity, Tate and Ingram should be dismissed from the case, Caruso's motion should be granted, the plaintiff's motion for a preliminary injunction should be denied, and CMS's motion should be denied.

## I. Facts

The plaintiff is a fifty-one year old man who began serving a lengthy prison sentence in 1990 for armed robbery and felonious assault. He has suffered from high blood pressure for many years and was treated with the medication Calan for his condition from 1997 through to November 2004.

In November 2004, he was transferred to the G. Robert Cotton Correctional Facility. The doctor at that facility confiscated the plaintiff's Calan and suggested he switch to an unknown

medication. The plaintiff refused to change from Calan to a different drug, and he requested transfer to a different facility. He signed a Release from Responsibility (R.O.R.) form on November 10, 2004, in which he acknowledged that he refused treatment and was notified that he would be welcomed back to the clinic when he is ready to receive treatment. About five months later, plaintiff was transferred to Mound Correctional Facility in Detroit, Michigan.

Defendant Vadlamudi, the MSP at Mound Correctional Facility, prescribed Calan to the plaintiff when he first arrived in April 2005. However, she did not approve any refills despite the plaintiff's multiple requests and grievances. On August 26, 2005, the plaintiff sent an urgent request for a refill because he was experiencing dizziness and headaches, but he received no response. On September 1, 2005, the plaintiff's bunkmate reported to the corrections officer on duty that the plaintiff was experiencing chest pains. The corrections officer arranged for him to see a nurse, and plaintiff requested to see the doctor. Instead the nurse placed him on lay-in status, meaning that the plaintiff's physical activity was restricted. Later that day, the plaintiff saw the nurse again about his chest pains and requested to see a doctor. His blood pressure was identified as very high, and the nurse scheduled plaintiff to see the doctor, but for various reasons the visit was delayed until September 12, 2005. When the physician visit finally came, the plaintiff entreated Dr. Vadlamudi to refill his medication, but she did not. The plaintiff continued to file urgent requests and grievances – and he continued to complain of headaches, dizziness and developing numbness on the left side of his body – without response.

On February 19, 2006, prison officials found the plaintiff unconscious on the unit floor. He was taken to Detroit Receiving hospital, where it was determined he had likely suffered a transient ischemic attack (TIA). While at the hospital, a magnetic resonance imaging (MRI) study was

performed, which disclosed degenerative changes in the cervical spine, irregularities and narrowing of the vertebral arteries, and common and cervical carotid arteries within normal limits.  The discharge record included instructions to ensure hypertension medication was taken to control blood pressure.  It also included a referral and appointment for plaintiff to consult with a neurosurgeon regarding the MRI report. Dr. Vadlamudi prescribed Calan for the plaintiff upon his return to the prison and followed up on the neurosurgeon consultation request.

Correctional Medical Services, Inc. (CMS) is the network care provider.  According to the Michigan Department of Corrections policy directive, the medical service provider at each prison – in this case Dr. Vadlamudi – is responsible for providing all prisoners medical care within the physician's level of expertise and the capabilities of the facility.  When the level of care exceeds the competence of the MSP or the institution, the MSP must refer the prisoner to the network provider, which is CMS.  If CMS refuses the referral, the MSP may appeal the decision.  In this case, CMS denied the referral for the neurosurgeon consultation.  A few weeks later, on March 3, 2006, Dr. Vadlamudi prepared another "CMS Authorization Request" for plaintiff to be referred for a neurology consult within one week, indicating the medical condition was urgent.  On March 8, CMS denied this second request stating there was no surgical issue involved, and that TIAs can be treated by the prison physicians.  On November 6, 2006, Dr. Vadlamudi again requested a neurology consult. This third request was denied by CMS on December 5, 2006.

On November 15, 2006, the plaintiff filed a grievance with defendant Caruso, stating that CMS had denied him ongoing medical care from March through November 14, 2006, and that he continued to suffer.  After further medical requests with no response, the plaintiff sent a letter to defendant Caruso on August 13, 2007, complaining about the lack of follow up treatment and

-4-

describing that he was in fear for his life because of the pain he was suffering and the numbness he was experiencing on the left side of his body.  There was no response to the letter.

On August 21, 2007, a nurse at CMS examined plaintiff and completed a diagnosis progress report describing the pain and numbness experienced by the plaintiff.  The nurse advised plaintiff that there was nothing further the nurses could do because there was currently no doctor at Mound Correctional Facility.  The plaintiff exhausted his state remedies and filed this civil rights complaint on January 17, 2008, requesting damages and injunctive relief.  He bases his claims on 42 U.S.C. § 1983, alleging that his rights under the Eighth and Fourteenth Amendments were violated.  The Fourteenth Amendment does not apply to claims by state inmates challenging the conditions of confinement, *Ford v. County of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008), so the Court will consider the plaintiff's complaint under the Eighth Amendment.  The plaintiff also moved for a preliminary injunction to compel the State to provide medical care for his ailments.

## II.  Discussion

Objections to a report and recommendation are reviewed *de novo*.  28 U.S.C. § 636(b)(1).  The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement."  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general."  *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A.  Defendants Caruso, Tate, and Ingram

Defendant Ingram has not been served, and it does not appear that the plaintiff otherwise has attempted to proceed against her.  Defendants not served within 120 days are dismissed from the lawsuit without prejudice.  Fed. R. Civ. P. 4(m).  The Court will so order.

The plaintiff concedes that the motion to dismiss ought to granted as to defendant Tate.  The Court agrees, and will so order.

Defendant Caruso is the director of the Michigan Department of Corrections.  The plaintiff alleges that he was denied access to medical services, and that defendant Caruso is personally liable by being deliberately indifferent to abuses by subordinates in the provision of medical care to prisoners.

Magistrate Judge Majzoub recommended that defendant Caruso's motion to dismiss be granted because section 1983 liability must be based on a defendant's personal involvement in the deprivation of a plaintiff's civil rights, and liability may not be based on *respondeat superior*; she determined that the plaintiff failed to state a claim for relief based on the defendant's personal involvement or as a supervising official.  The magistrate judge also found that plaintiff did not allege any facts showing that Caruso specifically encouraged or directly participated in any of the alleged unconstitutional actions of any other person or entity, as she played no part in the denial of Calan to plaintiff or in the decision not to allow plaintiff to see a neurosurgeon.  Finally, the magistrate judge found that plaintiff failed to allege any facts supporting a conclusion that the policy for inmate medical assistance is unconstitutional.

The plaintiff objects to these conclusions on the ground that a supervisor may be personally involved in a section 1983 violation in several ways including direct participation, supervisory

-6-

capacity, or formulating a policy that leads to civil rights violation by another, and Caruso was personally involved because she had actual knowledge of the abuses of CMS, a subordinate, but failed to control its actions or prevent further misconduct.  He also argues that the contract between CMS and Mound Correctional Facility was unconstitutional because it set a fixed plan to control offsite health care costs, and this cost-control measure contributed to the denial and delay of plaintiff's medical care.

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ---, 127 S. Ct. 1955, 1974 (2007).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Ibid.*  Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S. Ct. at 1964.  Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

To state a claim under 42 U.S.C. § 1983, the plaintiff must plead and prove (1) that there was a deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under of color of state law. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). The constitutional deprivation alleged by the plaintiff is his right to be free of cruel and unusual punishment under the Eighth Amendment, which resulted, he says, when he was denied medical care. A state's failure to provide necessary medical care to prisoners can establish a cause of action under section 1983 if the prisoner alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1986). Mere allegations of malpractice are insufficient to state a claim. *Id.* at 106. To succeed on a claim of deliberate indifference, the plaintiff must satisfy a two-prong test: (1) there is a serious medical need; and (2) the defendant was aware of the need and acted with deliberate indifference to it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). "To satisfy the subjective component, the plaintiff must allege facts which, if true,

-8-

would show that the official being sued subjectively perceived facts from which to infer substantial

risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."

*Comstock v. McCrary*, 273 F.3d 693, 707 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

The plaintiff does not contend that defendant Caruso was involved in the medical decisions

concerning him personally. Rather, he suggests that she was aware of the general policy directed

at and followed by CMS. However, the Sixth Circuit has explained:

> [S]upervisor liability under § 1983 is appropriate when "the supervisor encouraged
> the specific incident of misconduct or in some other way directly participated in it,"
> or "at least implicitly authorized, approved or knowingly acquiesced in the
> unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d
> 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). "[Section] 1983 liability of
> supervisory personnel must be based on more than the right to control employees."
> *Id.* Likewise, simple awareness of employees' misconduct does not lead to
> supervisor liability. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir.
> 1996).

*Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). In *Taylor v. Michigan Dept. of Corrections*,

69 F.3d 76, 80 (6th Cir. 1995), the Sixth Circuit held that a supervisor who "failed to take reasonable

steps to ensure that vulnerable inmates like plaintiff would not be transferred to a facility where a

substantial risk of serious harm existed" when "it was his responsibility to implement procedures

that would protect vulnerable inmates from dangerous transfers" could be held liable for a transfer

deliberately indifferent to an inmate's safety. However, this case was later described by the Sixth

Circuit as a case where it was "the *active performance* of the defendants' individual job function

which directly resulted in their constitutional injury." *Gregory v. City of Louisville*, 444 F.3d 725,

752 (6th Cir. 2006) (emphasis in original).

As the director of the department of corrections, defendant Caruso's job function had little

to do with the day-to-day assessment of the medical needs of prisoners. There is no credible

-9-

suggestion that she was personally involved in the decision to deny to the plaintiff prescription refills or referrals to a specialist. Even if Caruso was actually aware of the plaintiff's medical condition and left to the prison physician (the MSP) and the contract service provider the task of determining medical care, supervisory liability would not attach because "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary*, 349 F.3d at 903 (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

The plaintiff also contends that Caruso was aware of CMS's policy of delaying specialist referrals, which itself is an unconstitutional policy. The plaintiff reasons that the contract between CMS and Mound Correctional Facility was unconstitutional because it set a fixed plan to control offsite health care costs, and this cost-control measure contributed to the denial and delay of plaintiff's medical care. Cost control measures initiated by state and local governments by themselves are not unconstitutional. In fact, they are desirable. Director Caruso's knowledge of a policy that encourages cost containment does not translate into deliberate indifference to the plaintiff's medical needs in this case, since there is no suggestion in the pleadings that Caruso was aware of those needs and specifically disregarded them. That is a key component of the subjective element of the deliberate indifference test, which is absent from the plaintiff's complaint.

The Court agrees with the magistrate judge's determination that the complaint fails to state a claim against defendant Caruso. The plaintiff's objections to the recommendation to grant her motion to dismiss will be overruled.

B.  Defendant Vadlamudi

-10-

The plaintiff's complaint against Dr. Vadlamudi is that she was deliberately indifferent to his hypertension and ignored his requests for refills of medication he had been taking for years to control that condition, despite multiple urgent requests and symptomatic complaints.  The magistrate judge recommended that Vadlamudi's summary judgment motion be granted on the ground of qualified immunity.  The magistrate judge determined that Vadlamudi's conduct violated the plaintiff's Eighth Amendment rights and the plaintiff exhausted his administrative remedies for his claim against her.  The defendant does not challenge those determinations; therefore, the Court may and does adopt the report and recommendation as to those issues.  *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) (holding that the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  But the magistrate judge also found that the right was not clearly established, and it is to this finding that the plaintiff objects.

"To overcome a qualified-immunity defense in the setting of a constitutional tort, a plaintiff must establish (1) that the defendant violated a 'constitutional right' and (2) that the right 'was clearly established.'"  *Leary v. Livingston County*, 528 F.3d 438, 441 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Qualified immunity is an affirmative defense that protects state officials from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that a claim of qualified immunity must be examined in two stages, *see Saucier*, 533 U.S. at 200, although the Sixth Circuit sometimes expands the inquiry into a three-step sequential analysis, stating: "The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the

second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.'" *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 219 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  That court later explained that although the Supreme Court had continued to use the two-step approach, *see Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam), "'the three-step approach may in some cases increase the clarity of the proper analysis.'" *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir. 2005)).  It appears that when the state actor's conduct is obviously "objectively unreasonable" and violates a constitutional right, the court will "collapse[]" the last two steps.  *Ibid.* (quoting *Caudill v. Hollan*, 431 F.3d 900, 911 n.10 (6th Cir. 2005)).  Where a more exacting analysis of the facts may be necessary, the court tends to employ the third step, since "[i]t is important to emphasize that [the step-two] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (internal quotes and citation omitted).  The Supreme Court has retreated recently from the *Saucier* protocol, *see Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

-12-

addressed first in light of the circumstances in the particular case at hand."), but in this case it serves its purpose.

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

The magistrate judge reasoned that a narrow, fact-specific inquiry is required when determining if a right is clearly established. The application of that level of specificity led her to conclude that there was no precedent that would have put a reasonable person on notice that it is unconstitutional to refuse to prescribe blood pressure medicine for an extended period of time while attempting to treat the condition with lifestyle changes. The Court believes that the magistrate judge applied an incorrect approach to the issue.

It is true that a right must be clearly established in a particularized sense so that a reasonable official would understand that what she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, that does not mean there must be prior relevant case law holding "the very action in question" unlawful; rather the evidence is sufficient if it shows that in light of pre-existing law, the unlawfulness is apparent. *Ibid.*

-13-

The Sixth Circuit has noted that if courts required prior precedent on the specific facts at issue in the pending case, "qualified immunity would be converted into a nearly absolute barrier to receiving damages against an individual government actor. . . ." *McCloud v. Testa*, 97 F.3d 1536, 1556 (6th Cir. 1996). The Supreme Court clarified that neither a decision of the Court nor an extreme level of factual specificity is necessary in every instance to give fair warning. *United States v. Lanier*, 520 U.S. 259, 268 (1997). In 2002, the Court further reiterated the specificity required for fair warning, stating that its "opinion in *Lanier* thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The plaintiff pointed to a number of cases related to denying prisoners medication that were decided prior to the events in this case. For example, in *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992), a supervisor ignored complaints from prisoners that they were not receiving their prescribed medication. The court upheld a jury award for damages based on a finding of deliberate indifference to the prisoner's medical needs. *Hill*, 962 F.2d at 1212-15. In *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991), a prisoner in a holding cell was denied pain medication and dressings for a leg wound for five days. Although his wound healed normally, the court determined the nurse demonstrated deliberate indifference to his serious medical needs. The court pointed out that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Boretti*, 930 F.2d at 1153 (quoting *Estelle*, 429 U.S. at 103-05).

In a case similar to the present one, a district court in the Ninth Circuit denied summary judgment to doctors who refused to refill medication. *See Kenney v. Paderes*, 217 F. Supp. 2d 1095, 1096 (D. Haw. 2002). In that case, the prison doctors refused to prescribe medication that

-14-

previously had been prescribed to the prisoner and argued that the issue raised was at most a difference of opinion, which is insufficient to establish a claim for deliberate indifference to serious medical needs. The court stated that whether the prison doctors had the requisite knowledge of the prisoner's serious medical need sufficient to support an alleged Eighth Amendment violation based on deliberate indifference is a question of fact, and a fact finder could conclude that the doctors' actions rose to a level beyond mere differences in judgment. *Id.* at 1100-1101.

Although a Sixth Circuit case precisely on point was not found, that court has decided matters that give doctors fair warning of the duty to provide more than simple treatment. In *Lemarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001), for example, the court stated that "[a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm."

In this case, the plaintiff has provided sufficient evidence from which the jury reasonably could find a violation of his Eighth Amendment rights. In response to the defense of qualified immunity, the plaintiff has demonstrated that a reasonable doctor would be aware that denying medication for a chronic condition after repeated requests and persistence of symptoms could be a violation of a prisoner's rights. The Court finds, therefore, that defendant Vadlamudi is not entitled to qualified immunity at this stage of the proceedings.

### C. Defendant Correctional Medical Services

The plaintiff alleges that CMS violated his Eighth Amendment right to be free from cruel and unusual punishment by its deliberate indifference to his medical needs when it denied Dr. Vadlamudi's requests for referral to a neurosurgeon three times. The magistrate judge determined

-15-

that the plaintiff's allegations did not show, and his evidence failed to demonstrate, that defendant CMS exhibited deliberate indifference to his serious medical need, reasoning that CMS reviewed the plaintiff's first two requests for referral in a timely manner and the reasons for denial were given to the plaintiff.  The magistrate judge found the contract between CMS and the Michigan Department of Corrections was not unconstitutional simply because it contains cost-control provisions, and the facts alleged pertain only to a specific CMS decision about the plaintiff's treatment.  She determined that because the policy itself was not deliberately indifferent to the prisoner's medical needs, CMS could not be held accountable.  The magistrate judge also found that the plaintiff exhausted his administrative remedies for this claim.  CMS did not object to the report, and therefore the Court adopts the report and recommendation as to the exhaustion issues.  *See Thomas*, 474 U.S. 149-50; *Smith*, 829 F.2d at 1373.

The plaintiff objected to this report, insisting that his claim amounts to more than a disagreement over the course of treatment.  Rather, he says he is contesting the policy of delaying or denying referrals to specialists.  He also points to the service contract between the department and CMS as a manifestation of the illegal policy.  CMS filed a response to the objection emphasizing the distinction between individual and institutional liability under section 1983.

In *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978), the Supreme Court held that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  However, "[a] municipality may be liable under Section 1983 for actions of its authorized policymakers 'where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the

-16-

subject matter in question.'" *Adair v. Charter County of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). A policymaker is the final authority if his "'decisions are final and unreviewable and are not constrained by the official policies of superior officials.'" *Ibid.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)). A final policymaker is more than a final decisionmaker; a final policymaker is charged with the duty to "'formulate[ ] plans for the implementation of broad goals.'" *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (alteration in original) (quoting *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 376 (6th Cir. 2002)). *Monell*'s limitation on vicarious liability has been applied to private corporations by the Sixth Circuit. *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996).

The magistrate judge correctly concluded that the plaintiff's complaint does not allege a written policy by CMS that could subject it to liability as required by *Monell*. The written policy for cost containment, as noted above, is not by itself unconstitutional. On the other hand, the complaint (including the attached grievances) plainly states that the plaintiff suffered a chronic illness, he received medical testing, and the MSP made a referral to a specialist, presumably because the medical ailment called for expertise beyond the scope of her capabilities. Indeed, the MDOC's policy requires that the MSP must refer the prisoner to the network provider when the level of care required to treat the ailment exceeds the competence of the MSP. However, when the referrals in this case came through, *someone* at CMS refused to give the plaintiff the medical treatment he needed. The reason given for the denial essentially was that the plaintiff's problem could be treated at the institution. But the MSP would not have made the referral if she could have addressed the problem herself. Given the plaintiff's continuing complaints of pain and numbness on his left side,

plus the repeated referrals from the MSP, the denial of the referral to a specialist amounted to a denial of medical care altogether for a serious medical condition.

That practice does not appear to be an isolated one.  In a recent case, Judge Enslen of the Western District found evidence that prisoners in the custody of the Michigan Department of Corrections which "demonstrated widespread provider indifference to patient care," and remarked:

> If someone in the bureaucracy, including CMS, is stopping you from providing necessary services in a timely way, or stopping the patient from obtaining necessary specialist care or medicine, you should pester the malefactors until they respond and the services are provided. If they still won't relent, you are to relay their names, including correct spellings and addresses at which they may be arrested, to the medical monitor so those persons may be held in contempt and jailed, if necessary. The days of dead wood in the Department of Corrections are over, as are the days of CMS intentionally delaying referrals and care for craven profit motives.

*Hadix v. Caruso*, 461 F. Supp. 2d 574, 598-599 (W.D. Mich. 2006).  In another case, the plaintiff suffered a crush injury to his hand, was taken to Detroit Receiving Hospital where X-rays revealed a shattered finger, a physician prescribed pain medication, a nurse practitioner at the prison referred the plaintiff to an orthopedic specialist for surgery to repair his damaged finger, and CMS denied the referral.  The prisoner now has permanent damage to his hand.  *Calhoun v. Hill*, 2008 WL 4277171 (E.D. Mich. 2008).

Despite the absence of an unconstitutional written policy, a municipality also "may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels." *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  A "custom" for purposes of *Monell* liability against a municipality must "be so permanent and well settled as to constitute a custom or usage with the force of law."  *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).  In turn, the notion of "law"

-18-

must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville,*
*Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940). It must reflect a course
of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S.
808, 823 (1985).

Based on the regular instances of denials of referrals to specialists amounting to the denial
of medical care, there appears to be sufficient evidence to create a question of fact on the issue of
CMS's custom and regular practice when dealing with prisoner's needs for specialized medical care.
Summary judgment must be denied if there are questions of fact for the jury to resolve. *Harris v.*
*Bornhorst*, 513 F.3d 503, 519-20 (6th Cir. 2008). The plaintiff's objection to the recommendation
to grant CMS's motion for summary judgment, therefore, will be sustained.

### D. Preliminary Injunction

Earlier in the lawsuit, the plaintiff filed a motion for a preliminary injunction requesting that
the Court order that the defendants take the plaintiff to a neurosurgery specialist for analysis. The
magistrate judge filed a report recommending denial of the motion, and the plaintiff filed timely
objections.

"A preliminary injunction is an extraordinary remedy which should be granted only if the
movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*
*v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary*
*v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The magistrate judge determined that the
plaintiff's likelihood of success on the merits of his claim was remote. The Court believes that he
enjoys some likelihood of establishing his Eighth Amendment claim. But that is not the only factor

is determining whether extraordinary equitable relief should be granted.  Courts consider four factors to determine whether a preliminary injunction should issue:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).  "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003)).  "While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).  Similarly, "'the degree of likelihood of success required to support a grant of a preliminary injunction may depend on the strength of the other factors considered.'" *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

The second factor favors the issuance of a preliminary injunction only if the plaintiff "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  The plaintiff's medical condition plainly is chronic, not emergent.  The Sixth Circuit has held that, because "there is no guarantee that the plaintiffs' condition will improve or at least deteriorate at slower rate" with an injunction, the plaintiffs failed to establish irreparable harm. *Ibid.*

Similarly, the plaintiff's fear of death or permanent degeneration of his functioning is clearly an irreparable harm. However, whether a surgical consultation would prevent this harm is "unsubstantiated." This factor does not support a preliminary injunction.

"[N]o substantial harm can be shown in the enjoinment of an unconstitutional policy." *Chabad of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) (internal quotations omitted). Even if the defendants acted constitutionally, they are unlikely to experience "substantial harm," even if an unnecessary consultation were ordered. At most, it would be inconvenient and they may have to expend funds unnecessarily. This factor is neutral.

> The Supreme Court has noted that
>
> It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons. The relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen. For state prisoners, eating, sleeping, dressing, washing, working, and playing are all done under the watchful eye of the State, and so the possibilities for litigation under the Fourteenth Amendment are boundless. What for a private citizen would be a dispute with his landlord, with his employer, with his tailor, with his neighbor, or with his banker becomes, for the prisoner, a dispute with the State. Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems.

*Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973). On the other hand, the public interest favors the enforcement of Constitutional rights. *Chabad*, 363 F.3d at 436. However, because the plaintiff has not shown a strong likelihood of success on the merits of his claim, the claimed pain, suffering, and anxiety may be redressed by an award of damages, and there is no demonstrated need for emergency medical care, the public interest does not favor intervention in prison administration. This factor

weighs against a preliminary injunction.  The plaintiff's objection to the magistrate's report recommending denial of the motion for preliminary injunction, therefore, will be overruled.

III.

The Court agrees with the magistrate judge that the exhaustion rule does not bar the plaintiff's complaint, and the plaintiff has not stated a claim for relief against defendants Tate and Caruso.  The Court also finds that the complaint should be dismissed as to defendant Ingram.  The Court disagrees with the conclusion that defendants Vadlamudi's and CMS's motions should be granted. The Court finds that the plaintiff is not entitled to a preliminary injunction.

Accordingly, it is **ORDERED** that the magistrate judge's reports and recommendations [dkt #s 35, 49, 50, 51] are **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [#38, 40, 54, 55, 57] are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the plaintiff's motion for a preliminary injunction [dkt #27] is **DENIED**.

It is further **ORDERED** that defendant Patricia Caruso's motion to dismiss [dkt #23] is **GRANTED**.

It is further **ORDERED** that the motion to dismiss by defendants Tate and Vadlamudi [#36] is **GRANTED** as to defendant Tate and **DENIED** as to defendant Vadlamudi.

It is further **ORDERED** that defendant CMS's motion for summary judgment [dkt #43] is **DENIED**.

It is further **ORDERED** that the complaint is **DISMISSED** as to defendants Tate, Ingram, and Caruso.

-22-

It is further **ORDERED** that the matter is referred to Magistrate Judge Mona K. Majzoub under the previous reference order [dkt #8] to conduct all pretrial matters and ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 636(c)(1).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 16, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 16, 2009.

s/Lisa Ware
LISA WARE

---