UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LOWE,

       Plaintiff,           CIVIL ACTION NO. 08-CV-10269

vs.

                                  DISTRICT JUDGE DAVID M. LAWSON

SEETHA VADLAMUDI,       MAGISTRATE JUDGE MONA K. MAJZOUB
ELIZABETH TATE, RUTH
INGRAM, CORRECTIONAL
MEDICAL SERVS., and PATRICIA
CARUSO
       Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**   The Court recommends that the Motion for Summary Judgment filed by Defendant Correctional Medical Services, Inc. ("CMS") (docket no. 103) be **GRANTED**.

**II.**    **REPORT**:

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant CMS. (Docket no. 103). The motion is fully briefed. All pretrial matters have been referred to the undersigned for action. (Docket no. 8). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). The motion is now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.**    **Facts**

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendant CMS acted with deliberate indifference to his serious medical needs in violation of his

Eighth Amendment rights by refusing to approve two neurosurgery consultation requests. (Docket no. 1, ¶ 23). According to the record Plaintiff was found by prison officials on February 19, 2006 lying unconscious on the floor of his housing unit with a blood pressure of 166/104 and with no feeling on the left side of his body. (Docket no. 104, Notice of Emergency Dept. Visit). Plaintiff was transported to Detroit Receiving Hospital Emergency Room, where it was determined that he had suffered a probable transient ischemic attack (T.I.A.). (Docket no. 104, 2/19/06 Final Report). Upon admission to the hospital Plaintiff was seen by neurology, which reported finding 4/5 weakness in Plaintiff's left upper and lower extremities. (Docket no. 104, 2/19/06 Final Report). The following day Plaintiff underwent an MRI of the cervical spine and an MRA of the neck. (Docket no. 104, Radiology Exam Report). The MRI/MRA report shows degenerative changes in the Plaintiff's cervical spine, with the most severe changes being at the level of C6-C7. More specifically, the report shows that Plaintiff has right paracentral disc osteophyte complex that is indenting his spinal cord, with bilateral spurring causing moderate right neural foraminal narrowing, severe left neural foraminal narrowing, but a normal cord signal. (Docket no. 104, Radiology Exam Report).

Plaintiff was discharged from the hospital and transferred back to the prison facility on February 22, 2006. (Docket no. 104, 2/22/06 progress note). He was evaluated by Dr. Vadlamudi, the Medical Service Provider, on March 1, 2006. (Docket no. 104, 3/1/06 progress note). Dr. Vadlamudi's evaluation shows that neurology services saw the Plaintiff at the hospital and recommended a neurosurgery referral. (Docket no. 104, 3/1/06 progress note; Docket no. 108, Ex. A at 113-15). Although Dr. Vadlamudi had not yet reviewed the MRI/MRA report, based on the hospital's recommendation she submitted an urgent referral request to Defendant CMS on March

3, 2006, asking for approval for a neurosurgery consultation. (Docket no. 104, CMS Authorization Request; Docket no. 108, Ex. A at 113-15).

The March 2006 referral request, Form 407, identifies the Plaintiff's presumed diagnosis as left side intermittent numbness, with left sided weakness - T.I.A. ruled out. (Docket no. 104, CMS Authorization Request). As support for the request, Dr. Vadlamudi wrote the following:

> [Plaintiff] was seen in the E.R. Treated and released for T.I.A. CT of head without contrast negative. Referred to neurosurgery per recommendation of Detroit Receiving Hospital. MRI/MRA of neck done with and without contrast. Neurosurgical referral with Dr. Fernandez requested. MRI/MRA reports to go with the 407 to CMS when available. (Docket no. 104, CMS Authorization Request; Docket no. 108, Ex. A at 123-24).

Dr. Ivens, a Regional Medical Director for Utilization Review with Defendant CMS, denied the referral request on March 8, 2006. The reason for the denial is shown as "No surgical issue identified. T.I.A.'s can be treated by MSP." (Docket no. 104, CMS Decision Form). The denial does not address the true reason for the referral, which was for an evaluation of Plaintiff's pain and degenerative spinal condition. Dr. Vadlamudi testified that she was aware that she could submit a formal appeal of the denial, and in some circumstances has taken it upon herself to send a patient to the emergency room for work up even after a referral request has been denied. In this instance, however, she did neither, and indicated instead that she would monitor the Plaintiff as needed. (Docket no. 104, CMS Decision Form; Docket no. 108, Ex. A at153-56). Dr. Vadlamudi testified that she intended to monitor the Plaintiff's pain and degenerative spinal condition by prescribing Plaintiff pain and anti-inflammatory medication like Tylenol and Motrin. (Docket no. 108, Ex. A at 139-40, 158-59). The record does not show that a prescription for pain medication was written on Plaintiff's behalf.

Dr. Vadlamudi learned that Defendant CMS denied the neurosurgery referral on June 27,

2006. (Docket no. 108, Ex. A at 163-64). It is at this point, Dr. Vadlamudi testified, that she would have called Dr. Ivens by telephone and discussed with him why he had denied the request if she felt strongly about the need for a referral. (Docket no. 108, Ex. A at 163-64). In this case, however, she did not contact Dr. Ivens because she believed that Plaintiff's pain could be treated by an attending physician at the prison facility if Plaintiff became symptomatic. (Docket no. 108, Ex. A at 166-67).

On November 20, 2006 Dr. Vadlamudi saw Plaintiff in healthcare concerning his complaints of headache and intermittent left sided numbness. (Docket no. 104, 11/20/06 progress note; Docket no. 108, Ex. A at 169). During the visit Plaintiff was very demanding about wanting to see a neurosurgeon. Partly to appease Plaintiff, Dr. Vadlamudi decided to submit a second neurosurgery referral request to Defendant CMS. She also believed that a neurosurgical specialist may have a better understanding of how to treat the severe degenerative changes noted on Plaintiff's MRI report. (Docket no. 108, Ex. A at 171). Dr. Vadlamudi submitted a second neurosurgery consultation request to Defendant CMS on November 20, 2006. (Docket no. 104, Consultation Request). Under "Presumed Diagnosis" the request states: "complains of neck pain and head aches. T.I.A. ruled out. C.T. scan of head negative for bleeding and stroke. MRI of neck severe degenerative changes of C-spine at C6/C7 level. Complains of numbness left upper extremity." (Docket no. 108, Consultation Request). A response came back from Defendant CMS on December 4, 2006, asking for Plaintiff's CT and MRI results. The following day, Dr. Ivens denied the request, stating that the criteria for a specialist referral was not met. The denial indicates that Dr. Ivens considered this request as an appeal of the March 2006 request, but that no new information had been submitted for review. (Docket no. 104, Consultation Request).

Dr. Vadlamudi testified that she chose not to appeal the denials because she agreed with Dr.

4

Ivens' assessment and wanted to see if she could treat the Plaintiff's problems on her own. (Docket no. 108, Ex. A at 197). She further testified that if the Plaintiff's signs and symptoms changed, she would have appealed the denial or submitted a subsequent request. (Docket no. 108, Ex. A at 198). After November 2006, Dr. Vadlamudi did not submit another neurosurgery request to Defendant CMS on behalf of the Plaintiff, despite the fact that she was employed at Mound Road Correctional Facility until April 2009. (Docket no. 108, Ex. A at 14, 198).

**B.  Standard of Review**

Defendant CMS moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.  Analysis**

To prevail on an Eighth Amendment claim based on inadequate medical care, an inmate must show that the defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (citation omitted). An Eighth Amendment deliberate indifference claim requires proof of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825,

5

834 (1994). To satisfy the objective component, a prisoner must show that he had a serious medical need. The subjective component requires proof that the defendant was aware of that need and acted with deliberate indifference to it. *Id*. at 837.

1.  Serious Medical Need

Defendant CMS argues that the Plaintiff failed to demonstrate that he has an objectively serious medical need warranting protection by the Eighth Amendment. A medical need is objectively serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo Cnty,* 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted). " 'A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *Williams v. Mustafa*, No. 08-10197, 2009 WL 483134, at *15 (E.D. Mich. Feb. 24, 2009) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

The evidence shows that Plaintiff was diagnosed with severe osteoarthritic changes in the cervical spine and nerve impingement. (Docket no. 108, Ex. B discharge summary). His hospital physician concluded that the neuroforamina on the left side of his spinal cord were narrowed secondary to the osteoarthritic changes and could be a cause of Plaintiff's symptoms. (Docket no. 108, Ex. B Discharge Summary). As a result, in its discharge summary the hospital recommended that Plaintiff see Dr. Fernandez, a neurosurgery specialist, on an outpatient basis. (Docket no. 108, Ex. B Discharge Summary; Docket no. 104, Patient Discharge Instruction Record). The record also shows that Dr. Vadlamudi submitted two neurosurgery referral requests after evaluating the Plaintiff and his medical record. Plaintiff has submitted evidence to show that he continues to experience

weakness, numbness, and pain in the left side of his body, particularly in his neck and left arm. (Docket no. 108, Ex. H). The Court should find that the record contains sufficient evidence to present a genuine issue of fact concerning whether Plaintiff suffered from a serious medical condition.

2.  Custom or Practice of Defendant CMS

In order to establish liability against Defendant CMS under 42 U.S.C. § 1983, Plaintiff must show that Defendant CMS implemented a policy, custom, or practice that caused a deprivation of the Plaintiff's Eighth Amendment rights. *Monell v. Dep't of Soc. Serv*, 436 U.S. 658, 694 (1978); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993) (a plaintiff must identify a particular policy, connect that policy to the defendant, and demonstrate that the particular constitutional violation alleged resulted from the execution of that policy). The Court has previously concluded that Plaintiff's complaint does not allege facts to support a conclusion that Defendant CMS maintains an unconstitutional written policy discouraging specialist referrals. (Docket no. 63).

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'r v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted). A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not suffice. *Culberson v. Doan,* 125 F.Supp.2d 252, 263-64 (S.D.Ohio 2000).

Defendant CMS argues that there is no evidence that it engaged in a custom or practice of denying referrals to specialists. The evidence shows that approximately 150 referral requests are submitted to Defendant CMS from Mound Road Correctional Facility every month. Of those

7

requests, approximately 75% are approved by Defendant CMS without incident. (Docket no. 108, Ex. A at 185-86). Dr. Vadlamudi testified that to her knowledge there was never a time that Defendant CMS was more or less likely to approve or deny a request. (Docket no. 108, Ex. A at 187). She also testified that she was unaware of any unwritten MDOC or CMS policy that discourages the submission or approval of specialist requests. (Docket no. 108, Ex. A at 187-88). Furthermore, she testified that when she felt strongly that a referral request should be granted she contacted Dr. Ivens and discussed the matter with him, and that Dr. Ivens was "very good" about agreeing on a mutual compromise so that the patient could be treated. (Docket no. 108, Ex. A at 154-56). In addition to this evidence, the record contains an affidavit by Dr. Ivens which states that he based his denials upon his own independent medical judgment and upon what he believed to be the applicable standard of care and treatment, and not upon any policy, practice, or procedure of Defendant CMS. (Docket no. 103, Ex. D).

On his behalf Plaintiff submitted an expert report which states that with regard to the first neurosurgery request, Defendant CMS "interchanged and confused" the fact that Plaintiff was not requesting a neurosurgery evaluation for a T.I.A., but instead was requesting a referral for his pain and impingement on his cervical spine. (Docket no. 108, Ex. D at 4). The expert opines that Defendant CMS mistakenly denied the first referral request. He further opines that having a neurosurgical opinion, attention and pain relief was the logical post hospital course, and that Plaintiff was left without a good alternative in light of Defendant CMS's denial and Dr. Vadlamudi's unwillingness to proceed beyond the second referral attempt. (Docket no. 108, Ex. D at 3).

Even if the Court believes that Plaintiff met the criteria for a specialist referral, and that Defendant CMS mistakenly or wrongfully denied the requests, the denial of two neurosurgery

8

requests over an eight month period of time does not demonstrate that Defendant CMS engaged in a custom or practice of denying specialist requests so widespread as to have the force of law. This is particularly true where the evidence demonstrates that Defendant CMS authorizes the vast majority of referral requests it receives from Mound Road Correctional Facility. Plaintiff has not shown a widespread practice or custom of denying specialist referrals by Defendant CMS. Accordingly, the Court recommends that Defendant CMS's Motion for Summary Judgment (docket no. 103) be granted.

### III. **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1,"

"Response to Objection #2," etc.


Dated: December 3, 2010          s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 3, 2010          s/ Lisa C. Bartlett
Case Manager