UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LOWE,

          Plaintiff,

                                          Case Number 08-10269
v.                                        Honorable David M. Lawson

SEETHA VADLAMUDI and
CORRECTIONAL MEDICAL SERVICES,

          Defendants.
_____ /

## ORDER DENYING NON-PARTY MICHIGAN DEPARTMENT OF CORRECTIONS' MOTION TO QUASH SUBPOENA

      On May 31, 2012, the plaintiff served a subpoena containing fifteen requests for production of documents on the Michigan Department of Corrections (MDOC). MDOC responded to the subpoena, objecting to each request, on June 14, 2012. Presently before the Court is MDOC's motion to quash the plaintiff's subpoena. MDOC asserts that the subpoena was improper because it requests information outside the scope of the additional discovery granted by the Court, places an undue burden on MDOC, requests privileged information, and requests irrelevant documents. The plaintiff responds that the Court did not limit the scope of discovery, the requests do not place an undue burden on MDOC, the privilege that MDOC invokes is not recognized by federal law, and the documents requested are relevant. The Court has reviewed the pleadings and motion papers and finds that the papers adequately set forth the relevant facts and law and oral argument will not aid in the disposition of MDOC's motion to quash. Therefore, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

      MDOC's first argument is meritless. On April 10, 2012, the Court entered an order granting the plaintiff's motion for additional discovery and extending the discovery cut-off date to July 2,

2012. The order contained no special limit on the scope of discovery. The Court will not quash the subpoena on this basis.

MDOC next argues that the subpoena should be quashed because it creates an undue burden. Related to this argument is MDOC's contention that the documents requested in the subpoena are not relevant and the requests are not likely to lead to the discovery of admissible evidence. The Federal Rules of Civil Procedure permit broad but not unlimited discovery. In federal civil litigation, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A court "may, for good cause, issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Likewise, a person served with a subpoena may object to it and move to quash it. Under Rule 45(c), "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). The commentary to Rule 45 states that this subsection "is a catch-all category that enables the court to grant the motion to quash or modify in any other situation in which it finds, *sui generis*, what it believes to be an 'undue burden' imposed by the subpoena." Commentary C45-22 to Fed. R. Civ. P. 45(c)(3)(A)(iv). According to the Advisory Committee that provision was intended to track the protections of Federal Rule of Civil Procedure 26(c), which deals with protective orders.

"Undue burden" is not further defined by the rules, but generally a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be

incurred by the person or party producing it. *American Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (stating that the competing factors include "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed" and that "the status of a person as a non-party is a factor that weighs against disclosure" (internal quotation marks and citations omitted)); *see also EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (determining whether a burden is undue requires the court to weigh "the likely relevance of the requested material . . . against the burden . . . of producing the material."). Non-party status is also relevant in determining whether the burden should be considered undue or excessive. *See, e.g., N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D. D.C. 2005). However, a nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be allowed. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D. N.Y.1996); *see also Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995); 9A Wright & Miller, Federal Practice and Procedure § 2463.1, p. 507. "That person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." 9A Wright & Miller, Federal Practice and Procedure § 2463.1, p. 507. Relevancy is one factor used by courts to balance against the burden of production. The Court must weigh "the likely relevance of the requested material . . . against the burden . . . of producing the material." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir.1994). However, the burden of demonstrating relevance is on the party seeking discovery. *American Elec. Power*, 191 F.R.D. at 136.

MDOC makes several arguments that it contends demonstrate that the subpoena constitutes an undue burden. First, MDOC argues that the subpoena did not give sufficient time to respond, because it initially required a response within fourteen days. The response time was eventually extended to twenty-one days, but MDOC argues that the subpoena must be quashed because it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(c)(3)(A)(I). MDOC argues that this provision is traditionally read *in pari materia* with the thirty day time frame for a request for production of documents under Rule 34, but provides only a Fourth Circuit case from 1958 to support this proposition. *See Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (1958). The text of Rule 45 does not support this argument, and the Court finds that twenty-one days is a reasonable time to comply.

Second, MDOC argues that the subpoena should be quashed because it will require MDOC employees to travel a distance greater than 100 miles to deliver the requested documents. MDOC references Rule 45(c)(3)(A)(ii), which requires a court to quash a subpoena if it would "require[] a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii). This objection is explicitly addressed in the commentary to the rule, which states that

> [a]s long as the subpoena is served on the subpoenaed person within the proper territorial range of the subpoena . . ., it makes no difference that the materials sought are located beyond that range. Control of the documents or other things sought is the key, and if the entity servable locally has control, it must exercise that control to bring the materials in. Perhaps the most common example of this in practice is where a broad-based corporation present and served locally is required to produce local records that it maintains at some distant place (e.g., at its main office, some other branch, etc.).

Fed. R. Civ. Pro. 45 Commentary C45-6. MDOC has made no allegation that the subpoena was not served properly. Moreover, the suggestion that service of the subpoena on an agency of the State of Michigan is outside the territorial limits of the United States District Court for the Eastern District of Michigan is specious and deserves no further response. Accordingly, this argument is without merit.

Third, MDOC argues that the subpoena is burdensome because it would require several weeks of full-time work to compile the documents requested and many hours of staff time to review the documents. MDOC anticipates that the set of documents to be reviewed would consist of over 500,000 pages. MDOC's arguments as to the burdens imposed by the subpoena must be balanced against the likely relevance of the material requested by the plaintiff. *EEOC*, 26 F.3d at 47. The plaintiff's subpoena requests eight categories of information. First, in requests one and two, the plaintiff requests sought documents related to MDOC policies, procedures, and guidelines connected with the provisions of medical care and specialty care at correctional facilities. MDOC argues that this request is not relevant because the case is about alleged constitutional violations, rather than policies. However, MDOC's formal policies, procedures, and guidelines are relevant to show how CMS should have handled the specialty referral, which could then be contrasted against how CMS actually handled the referral. MDOC's policies are also relevant to determine whether Dr. Vadlamudi deviated from those policies, which would provide support for the plaintiff's claim that defendant Vadlamudi was deliberately indifferent to the plaintiff's medical needs. Any burden resulting from the production of these records is outweighed by their direct relevance to the plaintiff's claim. The suggestion that such records would exceed 500,000 pages is not credible.

Second, in request three, the plaintiff seeks records relating to MDOC's quality assurance policies and procedures governing the provision of medical care and specialty care in correctional facilities. *Ibid*. The requested documents are relevant because the underlying data and reports could demonstrate deviations by the defendants from MDOC's specialty care policies, procedures, and guidelines.

Third, in requests four through six, eight, and nine, the plaintiff seeks records concerning CMS's contract compliance and MDOC's evaluation of CMS's performance. *Ibid*. Those records are directly relevant and have the potential to show whether CMS was consistently failing to provide specialty care to inmates, whether MDOC and CMS ever communicated about deficiencies in rendering specialty care, whether CMS took active steps to fix the problem, and whether MDOC ever took action against CMS for any such contractual failings. In addition, the records sought in request eight would demonstrate the criteria by which any agreements or contracts with CMS were evaluated, reviewed, audited, or analyzed, which could demonstrate CMS's specialty care capabilities during the relevant time period. Those records are directly relevant to the plaintiff's claim that CMS has a policy, practice, and procedure of denying specialty care, and the immediate relevance of the request outweighs any burden of producing them.

Fourth, in requests seven and twelve, the plaintiff seeks the disciplinary and employment records of CMS and Dr. Vadlamudi. In request fourteen, the plaintiff seeks all grievances filed against Dr. Vadlamudi related to a failure to provide medication. The Court finds that the burden of producing such records outweighs their relevancy. Those records will certainly contain a great deal of information that is utterly irrelevant to the plaintiff's claim, and the likelihood that relevant information will be discovered is not sufficient to outweigh the substantial burden of producing such

records. In particular, the plaintiff's request for all grievances against Dr. Vadlamudi is unlikely to lead to relevant information, as the plaintiff need not make a showing that Dr. Vadlamudi had a practice of denying care, and is likely to be highly burdensome, given the number of grievances filed against prison personnel. The Court will not order MDOC to produce documents responsive to requests seven, twelve, or fourteen.

Fifth, in request ten, the plaintiff seeks communication between MDOC and CMS relating to speciality care and to the plaintiff. *Id*. at 15. That request is directly relevant to the plaintiff's claim. Clearly, any communication between MDOC and CMS related to the plaintiff has the potential to be relevant to the plaintiff's claims. Communication discussing specialty care between MDOC and CMS could be relevant to the plaintiff's claim that CMS had a policy, practice, or procedure of denying specialty care. The potential relevance of such communication outweighs the potential burden on MDOC in producing it, and the Court will order MDOC to produce documents responsive to this request.

Sixth, in requests eleven and thirteen the plaintiff seeks his own medical records and documents relating to Dr. Vadlamudi's treatment of him. Those documents form the core of the plaintiff's claims and the burden to MDOC of producing them is slight. The Court will order MDOC to produce documents responsive to these requests.

Seventh, in request fifteen the plaintiff seeks documents related to the accreditation of medical services by organizations like the National Commission on Correctional Healthcare, the American Correctional Healthcare, the American Correctional Association, and the Joint Commission on Accreditation of Healthcare Organizations for any facility where the plaintiff was housed from April 1, 2005 until the time when CMS no longer provided services to MDOC. The

information sought in this request is not relevant to the plaintiff's claims, and the Court will not order MDOC to produce it.

MDOC's final argument is that some of the documents that the plaintiff requests are protected by privilege. Although MDOC's motion does not identify which categories of documents it believes to be protected by privilege, MDOC's response to the subpoena demonstrates that the objection relates to requests three, four, five, and twelve. The Court already has determined that the burden to MDOC of producing documents responsive to request twelve outweigh the relevancy of those documents, and therefore will not address MDOC's privilege objection to that request. MDOC argues that the documents requested by requests three, four, and five are protected by "quality assurance/peer review privilege" or constitute "privileged risk management/quality assurance information." MDOC contends that such documents are privileged under Michigan law, and notes that Federal Rule of Civil Procedure 26(b)(3) exempts materials produced in anticipation of litigation from disclosure.

However, as the plaintiff correctly notes, because this is a federal question case, only privileges recognized under federal common law apply. *See* Fed. R. Evid. 501; *Hancock v. Dodson*, 958 F.2d 1367, 1372-73 (6th Cir. 1992). "Federal courts have generally declined to grant requests for new privileges." *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000). In addition, "[t]here is a special danger in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *Seales v. Macomb County*, 226 F.R.D. 572, 577 (E.D. Mich. 2005) (internal quotations omitted).

At the outset, MDOC has not provided any basis for this Court to recognize a "quality assurance" or "risk management" privilege. The statutory privilege that MDOC cites protects "the

-8-

record of a proceeding and the reports, findings, and conclusions of a review entity and data collected by or for a review entity." Mich. Comp. Laws § 331.533. MDOC argues that the Court should recognize this statutory "peer review" privilege and shield such documents from disclosure. The Supreme Court has refused to recognize a federal peer-review privilege in the university context, finding that such a privilege would not promote "sufficiently important interests to outweigh the need for probative evidence." *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990) (internal quotation omitted). The Supreme Court found that no limiting principle would prevent other professions and groups from seeking to claim a peer-review privilege. *Id*. at 194. However, MDOC presents a case from the Western Michigan District Court recognizing Michigan's peer review privilege. In that case, the court analogized a prison suit under section 1983 to a medical malpractice suit. *Hadix v. Caruso*, No. 4:92-CV-110, 2006 U.S. Dist. LEXIS 72967, at *8 (W.D. Mich Oct. 6 2006). Believing that such suits are the object of Michigan's peer review privilege, the court found that a failure to apply the peer review privilege ran the risk of eliminating candor in the peer review process. *Id*. at *9. Although the *Hadix* opinion has some merit, the Court is not inclined to recognize a federal peer review privilege in this case. This case is distinguishable from *Hadix*, in which the court found that disclosure of such records was not necessary in part because an independent medical monitor had been appointed in that case. Here, no such monitor has been appointed. In light of the reticence with which federal courts have granted new privileges, and the caution that should apply when states attempt to "define the scope of their own privilege when the misconduct of their agents is alleged," *Seales*, 226 F.R.D. at 577, the Court declines to quash the subpoena on the basis of peer review privilege.

Nor has MDOC presented sufficient facts or argument upon which the Court could quash the subpoena based on the work-product doctrine. MDOC has not identified the records for which it asserts work-product protection, who prepared those records, when the records were prepared, why the records were prepared, or the litigation or trial that was anticipated at the time the records were prepared. The Court will not quash the subpoena on this basis.

The Court finds that MDOC has not demonstrated that the plaintiff's subpoena creates an undue burden, requests irrelevant documents, or requests privileged matter with respects to requests one through six, eight through eleven, and thirteen. The Court will deny MDOC's motion with respect to those requests and order MDOC to produce documents responsive to the requests. However, the Court finds that the burden resulting from requests seven, twelve, fourteen, and fifteen outweighs the relevance of the documents requested. The Court will grant MDOC's motion with respect to those requests.

Accordingly, it is **ORDERED** that MDOC's motion to quash subpoena [dkt. #176] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that MDOC shall produce documents responsive to plaintiff's first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, and thirteenth requests to produce documents **on or before September 14, 2012**.

It is further **ORDERED** that the plaintiff's subpoena is quashed with respect to the plaintiff's seventh, twelfth, fourteenth, and fifteenth requests.

                                      s/David M. Lawson
                                      DAVID M. LAWSON
                                      United States District Judge

Dated: September 7, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 7, 2012.

          s/Deborah R. Tofil
          DEBORAH R. TOFIL